Louis and Jacqueline H. TUCKER h/w and Christina Tucker, by her parents and guardians Louis and Jacqueline Tucker,

v.

WHITAKER TRAVEL, LTD., Atkinson & Mullin Travel, Inc., R.M. Tours a/k/a Richard Moss Tours, Ltd., Happy Trails Stables, Commonwealth of the Bahamas, Ministry of Tourism.

Louis and Jacqueline TUCKER h/w and Christina Tucker, by her parents and guardians Louis and Jacqueline Tucker,

v.

The COMMONWEALTH OF the BAHAMAS and Ministry of Tourism.

Civ. A. Nos. 84–5123, 85–1685.

United States District Court,
E.D. Pennsylvania.

Oct. 25, 1985.

John J. O'Brien, III, Philadelphia, Pa., for plaintiffs.

Augustus R. Sigismondi, Philadelphia, Pa., for Whitaker Travel, Ltd.

John W. Walter, Philadelphia, Pa., for Atkinson & Mullin Travel, Inc.

William R. Herman, Philadelphia, Pa., William A. Bradford, Jr., Hogan & Hartson, Washington, D.C., for Commonwealth of the Bahamas and Ministry of Tourism.

## OPINION

LUONGO, Chief Judge.

Plaintiffs brought these related actions to recover for personal injuries which Jacqueline and Christina Tucker sustained while horseback riding in the Bahamas. Defendants are the Commonwealth of the Bahamas (the Bahamas), the Ministry of Tourism, several travel agencies and Happy Trails Stables. The complaints were filed in the Court of Common Pleas of Philadelphia County and were removed to this court by the Bahamas and the Ministry of Tourism (foreign government defendants, hereinafter government defendants). Plaintiffs have moved to remand Civil Action No. 84–5123 to state court or, in the alternative, to sever and remand the claims against all but the government defendants. The government defendants have moved to dismiss both cases for insufficient service of process, lack of personal and subject matter jurisdiction, and failure to state a cause of action. I will consider the motions filed in these two cases together. For the reasons set forth below, I will deny plaintiffs' motion to remand No. 84–5123 to state court and will grant the government defendants' motions to dismiss on the ground of foreign sovereign immunity. Because dismissal of the government defendants removes the basis for federal jurisdiction, the remaining defendants will be remanded to state court. Plaintiffs' motion to sever and remand the claims against these defendants will therefore be dismissed as moot.

### I. *Plaintiffs' Motion to Remand*

Plaintiffs assert as the first ground for their motion to remand that under the Foreign Sovereign Immunities Act (FSIA) the state courts may hear actions against a foreign government. *See* 28 U.S.C. §§ 1602, 1605. A companion case is currently pending in the Philadelphia Court of Common Pleas. The Hotel Corporation of the Bahamas, a named defendant in that case, did not act to remove the case to federal court. Plaintiffs argue that the Hotel Corporation is an agent of the Bahamas and that its failure to remove constitutes a waiver binding upon the government defendants in this case. Plaintiffs argue further that remand would permit their cases to be tried together, thus ensuring uniformity of result and efficient use of judicial resources, and, finally, that remand is required because the government defendants did not obtain the consent of all defendants to the removal petition.

The government defendants argue that as "foreign states" under the FSIA they have an absolute right of removal, that they do not need the consent of co-defendants, and that they cannot be deprived of this right on grounds of judicial efficiency. The government defendants deny that the Hotel Corporation's failure to remove a case in which they were not parties bars them from removing these cases.

The Bahamas and the Ministry of Tourism are "foreign states" under 28 U.S.C. § 1603.[1] Thus, they have the right

1. Title 28 U.S.C. § 1603 provides, in pertinent part:

For purposes of this chapter—
(a) A "foreign state," except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
(b) An "agency or instrumentality of a foreign state" means any entity—

under 28 U.S.C. § 1441(d)[2] to remove these actions to federal court. I agree with defendants' contention that co-defendants need not join in the removal petition. The Court of Appeals for the Fifth Circuit has noted that "§ 1441(d) by its terms requires no defendant other than the 'foreign state' to assent to or join the removal petition." *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1375 (5th Cir.1980). The legislative history of the FSIA establishes that the consent of co-defendants is not necessary: "[n]ew subsection (d) of section 1441 permits the removal of any such action at the discretion of the foreign state, even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the State in which the action has been brought." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 32, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6631. *See also* 1A J. Moore, *Moore's Federal Practice* ¶ 0.168[3.–2–2] at 559 (2d ed. 1985).

▮ In addition, when a "foreign state" defendant removes under § 1441(d), "the entire action against all defendants accompanies it to federal court." *Arango*, 621 F.2d at 1375. *See also Mori v. Port Authority*, 100 F.R.D. 810, 812 (S.D.N.Y. 1984); 1A *Moore's Federal Practice*

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

Plaintiffs do not dispute that the government defendants satisfy the requirements of this section.

2. Title 28 U.S.C. § 1441(d) provides, in pertinent part: "Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending."

3. Under limited circumstances, a defendant's failure to remove may become binding on other defendants. Courts have construed § 1441 to

¶ 0.163–1 at 369. These cases were therefore properly removed to federal court on the petition of the government defendants.

▮ I also reject plaintiffs' contention that the government defendants waived their right to remove these actions. Plaintiffs have cited, and my research has disclosed, no authority for the proposition that a defendant's failure to remove an action is binding upon different defendants in a different, though related, action.[3] The cases upon which plaintiffs rely are inapposite.

The defendant in *Laughlin v. Dow Chemical Co.*, 563 F.Supp. 271 (S.D.Tex. 1983), an American subsidiary of a French-nationalized corporation, had no independent right of removal. The court held that the parent corporation's removal of a related but separate action did not confer the right to remove upon its subsidiary. *Id.* at 272–73. The holding in *Laughlin* has no relevance to the instant cases, in which the government defendants are "foreign states" with an independent right to remove under § 1441(d).

Plaintiffs also cite *Blue Ox Corp. v. Murphy Oil Corp.*, 524 F.Supp. 1019 (D.Mont.1981), in which the court held that a defendant's failure to remove a lawsuit constituted a waiver of his right to remove a later suit based on the same occurrence.

require that a removal petition be filed within thirty days after the first defendant is served. If additional defendants are named after the thirty-day period expires, they have no right to remove. *See, e.g., Schmidt v. National Organization for Women*, 562 F.Supp. 210, 212 (N.D. Fla.1983); *Balestrieri v. Bell Asbestos Mines, Ltd.*, 544 F.Supp. 528, 529–30 (E.D.Pa.1982); *Fugard v. Thierry*, 265 F.Supp. 743, 745–47 (N.D.Ill. 1967). The rationale for this rule is that the first defendant, having failed timely to remove, cannot join in the removal petition. "Since all defendants must join in a petition for removal, when the initial defendant waived her right to remove the other defendants fell subject to the same disability." *Id.* at 745. *See also* 1A *Moore's Federal Practice* ¶ 0.168[3.–5–5] at 586–87. If, as in the present cases, the consent of all defendants is not needed there is no reason to apply this rule. *Id.* at 587 n. 10. The considerations underlying the rule are also not implicated when different defendants in a separate, though related, action seek to remove.

The court reasoned that the two complaints "name[d] the same parties and allege[d] the same wrong." *Id.* at 1020. The state action had been pending for ten years, and the court was reluctant "[t]o allow the defendant to 'test the water' in state court and now come before this court with essentially the same action." *Id.* at 1022.

These concerns are not implicated here, where the defendants seeking to remove the second action were not parties to the first. The Hotel Corporation's failure to remove a separate action should not bar defendants in these actions from exercising their right of removal. The Hotel Corporation asserted in the state court action that it is a corporate entity established by the Bahamian legislature, entitled to invoke the defense of sovereign immunity. This is not inconsistent with the government defendants' allegation that the Hotel Corporation remains an entity distinct from the Bahamian government and other agencies such as the Ministry of Tourism. The Supreme Court has held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First National City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 626–27, 103 S.Ct. 2591, 2599–2600, 77 L.Ed.2d 46 (1983). Plaintiffs have set forth no grounds upon which I can conclude that the Hotel Corporation's separate status should be disregarded.

Finally, considerations of judicial efficiency do not provide a basis for remanding this case to state court. The right granted to foreign states by § 1441(d) is a significant one. According to the House Judiciary Committee, "[i]n view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts." H.R.Rep. No. 1487 at 32, 1976 U.S.Code Cong. & Ad.News at 6631. The

government defendants have exercised their right to remove, and I cannot deprive them of a federal forum simply because remand to state court may promote judicial efficiency. *See, e.g., Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) (district court may not remand a case properly removed and within its jurisdiction for discretionary reasons not authorized by 28 U.S.C. § 1447(c)). Plaintiffs' motion to remand No. 84–5123 to state court will be denied.

## II. *Defendants' Motions to Dismiss*

The government defendants have moved to dismiss on two grounds. They claim first that service of process was insufficient under the FSIA, and second that they are entitled to sovereign immunity and this court therefore lacks personal and subject matter jurisdiction. Because I conclude that the complaints against the government defendants must be dismissed on the basis of their sovereign immunity, I need not, and do not, decide whether the government defendants were properly served.

Under the FSIA, a foreign state is immune from the jurisdiction of federal and state courts unless one of several specified exceptions applies.[4] 28 U.S.C. § 1604. Section 1605(a)(2) creates exceptions for actions

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

The "commercial exception" of § 1605(a)(2) applies if: (1) plaintiffs' suit is "based upon a commercial activity" conducted by the foreign state; and (2) this commercial activity has a sufficient connection with the United States. *See, e.g., Callejo v. Ban-*

---

**4.** The government defendants bear the burden of establishing that they are entitled to immuni-

ty. *See* H.R.Rep. No. 1487 at 17, 1976 U.S.Code Cong. & Ad.News at 6616.

comer, S.A., 764 F.2d 1101, 1107 (5th Cir. 1985); *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270 (3d Cir.1980).[5]

■ Plaintiffs make essentially two claims. First, they contend that the government "has preempted and regulates the entire field of tourism." Complaint at ¶ 82. Under this theory, plaintiffs seek to hold the government defendants liable for failure to regulate horseback riding, failure to supervise or take action against the parties allegedly responsible for plaintiffs' accident, and refusal to assist them in their investigation of the accident.

The government defendants contend they are entitled to immunity for such acts. I agree. Plaintiffs challenge the Bahamian government's decisions whether and how to regulate an industry, police the activities of its citizens, and investigate or assist in the investigation of accidents within its borders. Such decisions are peculiarly governmental and may not be subjected to scrutiny in the United States courts. *See generally International Association of Machinists v. OPEC*, 477 F.Supp. 553 (C.D.Cal. 1979), *aff'd*, 649 F.2d 1354 (9th Cir.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982); H.R.Rep. No. 1487 at 14, 1976 U.S.Code Cong. & Ad.News at 6613 (foreign states are immune for acts which are "sovereign or governmental in nature").

The second claim is based upon the government defendants' advertising and promotion of tourism. The parties have stipulated that defendants engage in extensive advertising to promote tourism and sports activities in the Bahamas.

■ Advertising and promotion of an industry are activities in which a private party could engage and which are "customarily carried on for profit." H.R.Rep. No. 1487 at 16, 1976 U.S.Code Cong. & Ad. News at 6615. They are thus commercial activities within the meaning of

§ 1605(a)(2). *Id.* *See also Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985) (where plaintiff, a United States resident, purchased certificates of deposit as a result of defendant's advertising in the United States, the sale of CDs to plaintiff was a commercial activity carried on in the United States).

■ Defendants do not deny that they are engaged in commercial activities. Rather, they claim immunity on the ground that plaintiffs' cause of action is not sufficiently connected to their advertising activities to fall within the commercial exception. Section 1605(a)(2) sets forth the connections on which jurisdiction can be premised.

The first clause of § 1605(a)(2) permits an action "based upon a commercial activity carried on in the United States." Plaintiffs contend their claims are based upon defendants' advertising activities in the United States. They have submitted a number of brochures and promotional materials published by the government defendants. Several brochures specifically mention horseback riding. One states: "What could be more refreshing than riding a grand horse through the tropical setting of miles of beachfront?" Others list the Happy Trails Stables and contain pictures of people riding horses. According to plaintiffs, defendants "lured" them to the Bahamas through misleading advertisements, Complaint at ¶¶ 87, 88, and misrepresented horseback riding as a " 'relaxing,' rather than harm-inducing activity." Memorandum of Law accompanying Plaintiffs' Response to the Defendants' Motion to Dismiss at 15, No. 85–1685.

According to the Third Circuit Court of Appeals, the first clause of § 1605(a)(2) applies only if there is a nexus between the plaintiff's grievance and the sovereign's commercial activity in the United States.

---

5. Plaintiffs' memorandum also discusses § 1605(a)(5), which provides an exception for actions "in which money damages are sought against a foreign state for personal injury or death ... occurring in the United States and

caused by the tortious act or omission of that foreign state...." Because plaintiffs' injuries did not occur in the United States, this exception is inapplicable.

*Sugarman v. Aeromexico, Inc.,* 626 F.2d 270 (3d Cir.1980). *See also Velidor v. L/P/G Benghazi,* 653 F.2d 812, 820 (3d Cir.1981), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982). Plaintiff in *Sugarman* sued Aeromexico, the national airline of Mexico, for injuries caused by a flight delay at the Acapulco airport. Aeromexico was a carrier of passengers between Mexico and the United States and conducted substantial airline operations in the United States. Plaintiff purchased Aeromexico tickets in New Jersey. The court found a sufficient relationship between plaintiff's injury and Aeromexico's commercial activities in the United States to permit the lawsuit. *Id.* at 272–73.

The nexus between the instant plaintiffs' personal injury claims and the government defendants' commercial activities falls far short of that in *Sugarman.* In *Sugarman,* the foreign state defendant's commercial activity was the conducting of airline operations in the United States. Plaintiff was injured because he was on one of defendant's Mexico-United States flights. The injury thus arose directly from defendant's performance of a commercial activity. *See id.; Ohntrup v. Firearms Center Inc.,* 516 F.Supp. 1281 (E.D.Pa.1981) (permitting an action for injuries caused in the United States by firearm which "foreign state" defendant exported to the United States), *aff'd mem.,* 760 F.2d 259 (3d Cir.1985).

In this case, defendants' commercial activities consist of advertising to promote tourism and sports activities, including horseback riding, in the Bahamas. Plaintiffs claim their injuries occurred because of the negligence of the Happy Trails Stables and its employees. The relationship between plaintiffs' injuries in the Bahamas

and defendants' advertisements is simply too attenuated to satisfy the requirement that plaintiffs' claims be "based upon" commercial activity in the United States. *See Tigchon v. Island of Jamaica,* 591 F.Supp. 765, 767–68 (W.D.Mich.1984); *Harris v. VAO Intourist, Moscow,* 481 F.Supp. 1056, 1061 (E.D.N.Y.1979); *Tucker v. Whitaker Travel, Ltd.,* —— Pa.Super. ——, —— ——, 501 A.2d 643 (Pa.Super.Ct.1985). *See also Dorrian v. Canadian Pacific Hotels, Ltd.,* No. 80–1740 (E.D.Pa. Dec. 2, 1980).

■ Plaintiffs also, however, advance negligent misrepresentation and breach of warranty theories. They claim the government defendants' advertisements were misleading and induced them to visit the Bahamas and to go horseback riding.[6]

■ These claims do appear to be "based upon" defendants' commercial activities in the United States. Plaintiffs' complaint, however, fails to state a cause of action for negligent misrepresentation or breach of warranty. I cannot accept plaintiffs' contention that an advertisement describing horseback riding as "refreshing" negligently misrepresents the activity as safe. Defendants' advertisements are not "representations" concerning the activity of horseback riding. Rather, they contain statements of opinion and description, which cannot be the basis for a claim of misrepresentation. *See, e.g.,* 4A *Personal Injury: Actions-Defenses-Damages* § 105[3][b][i] at Fraud–112, 116 (L. Frumer ed. 1982) ("broad and general commendatory or extravagant statements ... or puffing ... have generally been held to be too vague to be taken as anything other than reflections of the opinion of the speaker.").

---

6. Although these are state law claims, the parties have not discussed the issue of what law should apply. Plaintiffs apparently assume that the case is governed by general principles of United States law, as found in various cases and in provisions of the Restatements. The parties have not argued that Bahamian law applies, nor have they submitted information about the requirements of Bahamian law. I will therefore apply the law of Pennsylvania to these claims.

*See* Fed.R.Civ.P. 44.1 ("A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice."); 42 Pa.C.S.A. § 5327(a); Restatement (Second) of Conflict of Laws § 136, comment h, at 378–79 (1971). *See also Cavic v. Grand Bahama Development Co.,* 701 F.2d 879, 882 (11th Cir.1983); *Montgomery Ward & Co. v. Pacific Indemnity Co.,* 557 F.2d 51, 58 n. 11 (3d Cir.1977).

586

Moreover, plaintiffs have alleged nothing from which I can conclude that defendants had a duty to warn them of hazards associated with horseback riding. Plaintiffs have not claimed that defendants owned or controlled the Happy Trails Stables. *See Lavine v. General Mills*, 519 F.Supp. 332, 335 (N.D.Ga.1981). *See also Morena v. South Hills Health System*, 501 Pa. 634, 642, 462 A.2d 680, 684 (1983) ("Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time"); *English v. Lehigh County Authority*, 286 Pa.Super.Ct. 312, 336–38, 428 A.2d 1343, 1356–57 (1981). Defendants' brochures do not purport to include safety information about the Happy Trails Stables or the activity of horseback riding. The listing of the stables and the brief, general descriptions of the activity found in those brochures do not give rise to a duty to warn. *See id.* at 337–38, 428 A.2d at 1357.

■ Plaintiffs' breach of warranty theory falls on similar grounds. The statements in defendants' advertisements cannot reasonably be interpreted to warrant plaintiffs' safety if they were to go horseback riding in the Bahamas. *See* 4A *Personal Injury* § 105[3][b][i] at Fraud–114. In *Lavine v. General Mills*, 519 F.Supp. 332 (N.D.Ga.1981), the court held that a travel agency was not liable for breach of warranty when the plaintiff was injured on a tour arranged by the agency. The court reasoned: "Even if it were made, a general promise that the trip would be 'safe and reliable' does not constitute a guarantee that no harm would befall plaintiff." *Id.* at 336. Certainly a description of horseback riding as "refreshing" does not constitute a warranty that it is safe.

■ I conclude that plaintiffs' claims, to the extent that they are based on defendants' commercial activities, do not state a cause of action. Clause one of § 1605(a)(2) thus provides no basis for abrogation of defendants' sovereign immunity.

■ The second clause of § 1605(a)(2) is also inapplicable. Plaintiffs base their claims upon acts performed in the Bahamas and commercial activities performed in the United States, not upon acts "performed in the United States in connection with a commercial activity of the foreign state elsewhere."

■ The third clause permits an action based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." § 1605(a)(2). The requirements of this clause are not satisfied in the instant case. The acts upon which plaintiffs base their personal injury claims are not, in my view, connected to any commercial activities which the government defendants carried on either in the United States or elsewhere. Moreover, those acts did not cause a "direct effect" in the United States.

■ The direct effects of the various defendants' tortious conduct are plaintiffs' injuries, which occurred outside the United States. Whatever pain and pecuniary loss plaintiffs suffer in the United States are indirect consequences of the accident in the Bahamas. As Judge Hannum held in *Dorrian v. Canadian Pacific Hotels, Ltd.*, No. 80–1740, slip op. at 9 (E.D.Pa. Dec. 2, 1980), "causing injury to an American citizen abroad does not cause a direct effect in the United States despite the fact that the injury which was suffered abroad continues to cause suffering and economic loss to plaintiff in the United States." *See also, e.g., Australian Government Aircraft Factories v. Lynne*, 743 F.2d 672, 674–75 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985); *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 272 (3d Cir.1980); *Close v. American Airlines, Inc.*, 587 F.Supp. 1062, 1064 (S.D.N.Y. 1984); *Tucker*, —— Pa. at —— ——, 501 A.2d 643. Since plaintiffs' injuries do not constitute a direct effect in the United States, clause three of § 1605(a)(2) is inapplicable.

Under the FSIA, federal district courts have personal and subject matter jurisdiction only if the foreign state defendants are not entitled to immunity. 28 U.S.C. § 1330(a) & (b); *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983). None of the exceptions to sovereign immunity set forth in the FSIA apply in these cases. The government defendants are therefore immune and I lack personal and subject matter jurisdiction. The government defendants' motions to dismiss will be granted.

Dismissal of the foreign government defendants eliminates the source of federal removal jurisdiction in these cases. I will therefore exercise my discretion to remand the remaining defendants to state court. *See, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1377 n. 6 (5th Cir.1980); *Hinkle's Jeep Sales v. Villa Enterprises,* 90 F.R.D. 49, 52 (S.D. Fla.1981).